HENRY W. HUBBELL, Appellant, *v.* THE PACIFIC MUTUAL INSURANCE COMPANY, Respondent.

Plaintiff made application to defendant for insurance upon the cargo of a vessel, the premium to be at the rate fixed and on the same terms granted by another insurance company named. The application was accepted by defendant. It was the custom on such an application for the insurer to issue a policy in from ten to twenty days, on payment of the premium or delivery of a note of the insured therefor. Within twenty days after the application plaintiff became insolvent and made a general assignment for the benefit of creditors. Thereupon defendant's brokers notified plaintiff and his assignees that it would not be bound unless the premium was properly secured ; they took no steps in that direction, paid no premium, tendered no note, and did not demand a policy, but took part in procuring a new and different insurance upon the cargo, and no claim was made for over seven years under the agreement. In an action upon said agreement, *held,* that under it the insurer was bound to issue a policy in the usual and ordinary way, and within the usual time, but only upon payment by the insured of the premium or his giving the customary note, and either party, upon the refusal of the other to perform, could treat the refusal as an abandonment, and by joining therein could terminate the contract ; that while the insolvency of defendant did not *per se* terminate the contract, it gave the insured an equitable right to demand and receive a note of some responsible party, or payment of the premium in cash, and the default of plaintiff in not so paying or securing the premium, after notice that it was required, accompanied by the failure of himself or assignees to demand a policy or take note of its absence, and their action in procuring other insurance justified the insurer in inferring an intent on their part to terminate the contract which its concurrence made effective.

Defendant presented an account to plaintiff, in which was charged an item of premium which referred to the insurance in question or that of the cargo of another vessel which arrived safely, where the agreement was similar and no policy was issued ; it was not proved, however, that it related to the former. *Held,* in the absence of such proof, it could not be urged as a recognition of that insurance as a subsisting contract and a waiver of plaintiff's default; and that from the fact there had been a breach of another similar contract it did not follow that there was a mutual abandonment of it as in this case, or because default had been waived in that case that it had also been in this.

(Argued June 9, 1885 ; decided October 6, 1885.)

APPEAL from judgment of the General Term of the Supreme

Court, in the first judicial department, in favor of defendant, entered upon an order made February 3, 1882, which overruled plaintiff's exceptions, denied a motion for new trial and directed judgment on an order dismissing the complaint on trial.

This action was brought upon an alleged contract of marine insurance.

Plaintiff, who was interested in purchases and shipments of hemp in East India markets, having been advised by his agents at Hong Kong that they had chartered the ship *Stuart Wortley* for a voyage from Manila to New York, with a cargo of hemp, on October 8, 1867, made application in writing through Bell & Hayward, marine insurance brokers, to defendant for insurance on the cargo, of which the following is a copy:

"Insurance is wanted by Henry W. Hubbell for account of whom it may concern, loss, if any, payable to him for $10,000 on cargo, valued £ sterling, as for at $10.50 on board the British ship *Stuart Wortley*, Showers, master, at and from Manila to New York  *  *  *  same rate as Atlantic charges and on same terms."

The insurance was made binding by the signature in initials of the vice-president of the defendant.   Plaintiff held at the time an open policy of insurance in the Atlantic Mutual Insurance Company and had arranged with that company for an insurance on the same cargo under that policy.

On October 11, 1867, Messrs. Bell & Hayward advised the plaintiff by a "memorandum," signed by themselves, that they had covered $10,000 with defendant.

It appeared upon the trial that according to the usual course of dealing, after such an application had been made binding, a policy would be issued "all along from ten to twenty days" and sent to the insured, accompanied by a premium note, to be signed by the insured, and returned to the company, the insured retaining the policy.   Before any policy was issued by defendant, or any premium note was signed, and within less than twenty days from the application, the plaintiff failed in business, became openly and notoriously insolvent and made a

general assignment for the benefit of creditors.    Immediately after the assignment, Messrs. Bell & Hayward notified plaintiff, by letter, dated October 30, 1867, that the companies in which this and the other risks had been made binding, but for which policies had not been issued, *declined* " *to issue policies for same until the premiums are made satisfactory,*" adding, " we deem it right to give you the information in this shape, that you may take such steps for the protection of all concerned as may be necessary."    The plaintiff made no reply to this communication, and did nothing touching the insurances referred to therein.    On November 2, 1867, Messrs. Bell & Hayward, at the previous request of the assignees, gave them a list of the insurances effected by them in the plaintiff's name with this statement entered therein — " the policies for which the companies *refuse to deliver until the premiums are satisfactorily guaranteed.*"    Upon this list appeared defendant's insurance.    Neither plaintiff nor the assignees made any provision for paying or guaranteeing the premiums, and nothing was done by them under the notice, but new policies were taken out as stated in the opinion.    The *Stuart Wortley* was lost in the China sea September 20, 1867, official information whereof reached New York in November, 1867, and plaintiff's assignees and the consignees of the cargo collected the other insurance. In August, 1874, plaintiff having procured releases from his creditors procured a reassignment from his assignees of all the property and assets remaining and, thereafter, made a claim for loss.

*George H. Forster* for appellant.    The preliminary contract was valid and binding.    Payment of the premium at the time was not necessary to make the same obligatory.    There was a credit given of six months.    The issue of the policy was unnecessary.    (*Train* v. *H. P. Ins. Co.,* 62 N. Y. 602 ; *Sandford* v. *T. F. Ins. Co.,* 11 Paige, 547 ; *Baptist Church* v. *B. F. I. Co.,* 18 Barb. 69 ; *Tayloe* v. *M. F. I. Co.,* 9 How. [U. S.] 390 ; *Fish* v. *Cottenet,* 44 N. Y. 538 ; *Perkins* v. *W. Ins. Co.,* 4 Cow. 645 ; *Lightbody* v. *N. A. Ins. Co.,* 25 Wend. 25 ;

*Ellis* v. *A. C. F. Ins. Co.*, 50 N. Y. 402.) The loss having occurred and been known before a policy would be issued, no policy is necessary. (*Rockwell* v. *H. F. Ins. Co.*, 4 Abb. 179 ; *Ellis* v. *A. C. F. I. Co.*, 50 N. Y. 405 ; *W. Tool Co.* v. *H. F. I. Co.*, 7 Hun, 74.) The question was clearly one for the jury, and it was error for the court to take the case from them. (*Masten* v. *Deyo*, 2 Wend. 424 ; *Foshay* v. *Ferguson*, 2 Den. 617 ; *Bacon* v. *Towne*, 4 Cush. 218 ; *Besson* v. *Southard*, 10 N. Y. 240 ; *Heyne* v. *Blair*, 62 id. 19 ; *Kavanagh* v. *Wilson*, 70 id. 177.) If companies place in their policies conditions limiting the time within which proofs must be presented, or suit brought, such conditions are valid and enforced by the courts. (*Ripley* v. *Ætna Ins. Co.*, 30 N. Y. 136 ; *Roach* v. *N. Y. & E. Ins. Co.*, id. 546 ; *Smith* v. *Haverhill M. F. Ins. Co.*, 1 Allen, 297 ; *Ames* v. *N. Y. U. Ins. Co.*, 14 N. Y. 253 ; *Mayor* v. *H. Ins. Co.*, 39 id. 45.) But if no such condition or limitation is in the contract of insurance, courts have no power to impose it. (*DeGrove* v. *Metcalf Ins. Co.*, 61 N. Y. 606 ; *Gamble* v. *A. As. Co.*, 4 Irish [Law Exch.], 204 ; *Riddlesbarger* v. *H. I. Co.*, 7 Wall. 386 ; *Emmons* v. *Hayward*, 6 Cush. 501.) It cannot be said, as matter of law, that fifteen months was an unreasonable time for presentation of proofs, considering the facts in the case. (*Pattershall* v. *Franter*, 4 Nev. & M. 649 ; *Fielder* v. *Starkie*, 1 H. Bl. 17 ; *Wiberts* v. *Erie R. Co.*, 12 N. Y. 245 ; *Edwards* v. *B. Ins. Co.*, 3 Gill [Md.], 176 ; *People, ex rel.* v. *Common Council*, 78 N. Y. 57 ; *In re Lord*, id. 109.) The English insurance was an independent insurance, on an independent interest. It is not double insurance. (*Warder* v. *Horton*, 4 Binn. [Penn.] 529 ; *Hastings* v. *W. F. Ins. Co.* 73 N. Y. 141 ; *Godin* v. *R. Ex. Ass. Co.*, 1 Burr. 489.) The complaint was improperly dismissed, either on the ground that the statute of limitations was a bar to the action, as held by the General Term, or on the ground of inexcusable inattention and laches. (*First Nat. Bk.* v. *Morgan*, 73 N. Y. 593 ; *Tayloe* v. *Merchants' F. I. Co.*, 9 How. [U. S.] 390 ; *In re Lord*, 78 N. Y. 111.) Conditions which impose a forfeiture are con-

strued strictly against the insurers who impose them, and for whose benefit they are imposed, and liberally in favor of the insured, upon whom they impose burdens more or less onerous, so that the latter will be held to nothing in this behalf, not explicitly required by the terms of this condition. (*Catlin* v. *S. F. Ins. Co.*, 1 Sumn. 434; *Welcome* v. *People's Eq. Mut. F. Ins. Co.*, 2 Gray, 480; *Mason* v. *Harvey*, 8 Wel. Hurl. & Gor. [Exch.] 819; *S. G. Mut. Ins. Co.* v. *Evans*, 9 Ind. 1; *Roper* v. *Lendow*, 1 Ell. & Ell. [Q. B.] 825; *Com. Ins. Co.* v. *Jarrett*, 41 Penn. 161; *Blakeley* v. *P. Ins. Co.*, 20 Wis. 205; *Gilbert* v. *N. Am. Ins. Co.*, 23 Wend. 45; *Battaile* v. *M. Ins. Co.*, 3 Rob. [La.] 384; *G. W. Ins. Co.* v. *Stadden*, 26 Ill. 360.) The theory of inattention or laches is not sustained by authority. (*Merritt* v. *Todd*, 23 N. Y. 28; *Howland* v. *Edmonds*, 24 id. 307; *Herrick* v. *Woolverton*, 41 id. 581; *Wheeler* v. *Warner*, 47 id. 519; *Sands* v. *Annesley*, 56 Barb. 598; *Osgood* v. *Toole*, 60 N. Y. 475; *Hope Ins. Co.* v. *Perkins*, 38 id. 408; *H. Mut. L. Ins. Co.* v. *Taylor*, 2 Rob. 278.) There was no release under seal, which alone could discharge defendant without payment or satisfaction. (*Brooklyn* v. *Degrauw*, 23 Wend. 342; *Hawley* v. *Foote*, 19 id. 516; *Olcott* v. *Rathbone*, 5 id. 490; *Bunge* v. *Koop*, 48 N. Y. 225; *Ryan* v. *Ward*, id. 204; *Gray* v. *Barton*, 55 id. 71; *Bliss* v. *Swartz*, 65 id. 444.) Limitations of actions never commence until the cause of action accrues. (*Hay* v. *S. F. Ins. Co.*, 77 N. Y. 243; *Ames* v. *N. Y. U. Ins. Co.*, 14 id. 264; *Mayor* v. *H. F. Ins. Co.*, 39 id. 46; *Mix* v. *A. Ins. Co.*, 9 Hun, 400; *Browning* v. *P. Ins. Co.*, L. R., 5 P. C. 75; *Fisher* v. *Mayor*, etc., 67 N. Y. 73.)

*William Allen Butler* for respondent. The rule applicable to all contracts requiring any act to be done by one party as a condition of performance by the other party is, that, if the contract specifies no time, the law implies that that act shall be done within a reasonable time. When the facts are undisputed the question of reasonable time is a question of law. (2 Pars. on Cont. 173, 178; *Bennett* v. *Lycoming Co. Ins. Co.*,

67 N. Y. 274; *Aymar* v. *Beers*, 7 Cow. 705; *Ballard* v. *Walker*, 3 Johns. Cas. 60, 65; *Barbee* v. *Willard*, 4 M. L. 356.) The fact that no claim was asserted or notice given as respects the defendant, coupled with the fact that long before the loss was ascertained the insured was notified that no policy would issue unless the premium was made satisfactory, and that no attempt was made to pay or secure it, establishes such laches on the part of the plaintiff as to prevent any recovery in this action. (*Codman* v. *Rogers*, 10 Pick. 111; *Price* v. *Yates*, 19 Alb. L. J. 295; *Laforge* v. *Jayne*, 9 Penn. St. 410.) While the application made October 8, 1867, and its acceptance by the defendant made the risk binding, it was contemplated by both parties, as a part of the transaction, that a policy of insurance should be issued pursuant to the application, and a promissory note for the amount of the premium given by plaintiff to the defendant, simultaneously with the receipt by him of the policy. (1 Phil. on Ins., §§ 15, 16; *Ex parte Chalmers*, L. R., 8 Ch. App. 289; *Morgan* v. *Bain*, L. R., 10 Eq. Cas. 15.) A purchaser of a chose in action must always abide by the case of the person from whom he buys. (*Davies* v. *Austin*, 1 Ves. 247; *Bush* v. *Lathrop*, 22 N. Y. 535.)

FINCH, J. It has been held that such a preliminary contract of insurance as was made in this case is not, in and of itself and standing alone, the basis of an action, but amounts to an agreement to insure upon the terms of the usual policy afterward to be issued, for a breach of which agreement an action lies, and the loss may be recovered. (*Ellis* v. *Albany City Fire Ins. Co.*, 50 N. Y. 402; *De Grove* v. *Metropolitan Ins. Co.*, 61 id. 594.) This doctrine implies that essential conditions of the contract remain to be performed, and that the insurance takes effect upon that assumption. These conditions are subsequent in point of time, but on each side precedent to the right of action. The insurer is bound to issue the policy in the usual and ordinary way and within the usual and reasonable time, and within the same time the insured is bound to

pay the premium, or if credit is allowed, to give the customary note. But the insured is not bound to pay if the policy is refused, and the insurer is not bound to deliver the policy if the premium or the stipulated note is withheld. Either party not in default may compel performance by the other, or treating the refusal as an abandonment, may himself join in the abandonment and so terminate the contract and destroy its existence. (*Graves* v. *White*, 87 N. Y. 463 ; *New Eng. Iron Co.* v. *Gilbert El. R. R. Co.*, 91 id. 168.) If in such case the breach on one side is such as to indicate an intent to abandon or repudiate the agreement, the other party may assent and so the contract be dissolved.

In the present case neither party performed or offered to perform the mutual conditions within the agreed or customary time, and both parties appear to have abandoned the contract. It was made on the 8th of October, 1867 through Bell & Hayward who acted as brokers and agents for both parties. The custom was that in ten or twenty days the policy would be issued upon payment of the premium or the delivery of a note of the insured. Such note, where credit was to be given, appears to have been not only the customary condition, but essential and material. It both fixed the term of credit beyond dispute, and showed that payment had not, in fact, been made, and in the hands of the insurer could be discounted and used as business paper whenever the exigency of losses or expenses should require. Of course the custom permitted this credit only in the case of responsible parties, and when the note tendered was assumed or understood to be good. But within the customary twenty days two things happened. The plaintiff became insolvent so that his premium note, if offered, would have been worthless ; and he made a general assignment of all his property for the benefit of creditors. From that date the insurable interest in the cargo of the ship *Stuart Wortley* passed out of the plaintiff and to his assignees, and they became the owners of his contract of insurance, and of all his rights under it. But they took it *cum onere ;* they took it as he held it subject to the payment of the pre-

mium or the delivery of the premium note. The insolvency of plaintiff did not *per se* terminate the contract, but it gave to the insurer an equitable right, to demand and receive, instead of the worthless note of plaintiff, the note of the new owners of the contract, or of some responsible parties, or payment of the premium in cash. Such a notice was given by Bell & Hayward in behalf of the insurers to both plaintiff and his assignees. They were explicitly told that the insurers would not be bound unless the premium was properly secured. The plaintiff and his assignees took no steps in that direction. They paid no premium; they tendered no premium note; they demanded no policy. There was also not only a breach of the agreement now sued upon, but affirmative action indicating an intent to abandon the contract, and justifying that conviction on the part of the insurers, for the assignor and assignees took part in procuring a new and different insurance upon the cargo of the vessel. That cargo was hemp, purchased in Manila, through letters of credit issued by English bankers, who were protected by a lien upon the cargo through bills of lading and who procured for their own safety a new insurance. That for the benefit of Brown Brothers & Co. was procured in New York, valuing the pound sterling as drawn for at $8.50, instead of $10.50, as in the original insurance; and the remaining $2 of such valuation, representing expected profits on the cargo, was covered by an insurance taken in the name either of assignor or assignees. The portion of the cargo paid for out of the letter of credit issued by the English and American bank was in like manner insured for the benefit of that institution but in foreign companies. It turned out that the *Stuart Wortley* had been wrecked in the China seas, and her cargo totally lost in the previous September, and before even the date of the contract with defendant. The protest of the captain, detailing the circumstances of the wreck, appears to have arrived in December, and soon thereafter proofs of loss were made and the insurance was collected. That paid for the full cargo, including estimated profits. The default of plaintiff in not paying or securing the premium, accompanied by his

failure and that of his assignees to demand a policy or take note of its absence, and their action in procuring a new insurance, and this in the face of a notice that they must give a good note, or the contract would be deemed not binding, fully justified the insurers in inferring an intent to abandon the contract, which their concurrence made effective. And such mutual assent is rendered certain and conclusive by the further fact that with the exception of a single incident hereafter to be noticed nothing transpired between these parties for over seven years; and whatever else may be the effect of that long silence and inaction, it assuredly bears conclusively upon the mutual intent ·to abandon, and the knowledge and assent of each party of and to such abandonment. So far and upon this state of facts the inference was inevitable and dependent upon no controversy in the proofs.

But the appellant claims that there would have been such controversy, and the question of abandonment would have gone to the jury if evidence offered by him had not been illegally excluded. He sought to prove that an item in an account rendered in 1872 under date of April, 1868, was for an insurance premium in a case where no policy had been issued and where the agreement was similar to that relating to the cargo of the *Stuart Wortley*, which evidence was excluded. The ruling was unimportant, since at a later period of the case all the facts relating to this item were admitted, and it was shown in substance that it must have referred to the insurance upon the *Stuart Wortley* or the *Ashburton*, which arrived safely, no policy having been issued in either case, and the item charging an unpaid premium as an existing debt. Upon those facts it is argued that the question of abandonment should have gone to the jury, and the court erred in dismissing the complaint. The item referred to was not shown to have related to the premium on the *Stuart Wortley*, and cannot, therefore, be urged as a recognition of that insurance as a subsisting contract, and a waiver of the non-payment of the premium or non-delivery of a sufficient note. But yet, it is said, it must then have been a

charge for the premium on the *Ashburton.* We may grant so much ; but because in that case there was a breach of the contract, it does not necessarily follow that there was a mutual abandonment, or that the unknown facts of that case would have warranted the inference as they did in this ; and because a default may have been waived in one case there is no necessary inference that it was also waived in another and different one. The insurer was not bound to treat both alike so far as his own action was concerned. However unjust or unreasonable it might be not to do so, no law compelled the insurer, if he waived a default in one case, to waive it also in another. The company might recognize the contract as to the *Ashburton,* which arrived safely and on whose cargo there was no loss, and collect the premium, if plaintiff did not object, and its interest lay in that direction ; but it would not at all follow from that, or justify an inference, that the insurer waived a default in the case of the *Stuart Wortley,* and reinstated that abandoned contract for the purpose of becoming liable for the large loss known to have happened. So that the facts relied on did not change the situation or raise a question for the jury.

. The judgment should be affirmed, with costs.

All concur.

Judgment affirmed.