## J. N. HAMILTON v. ASA CROSSMAN.

### APPEAL BY DEFENDANT FROM THE COURT OF COMMON PLEAS OF INDIANA COUNTY.

Argued October 23, 1889—Decided November 11, 1889.

(a) Williams conveyed to Hamilton 200 acres of land covenanting to be responsible for any damage which Hamilton should sustain by reason of the failure of the boundaries, given in the deed, to include all the cleared land. Hamilton entered upon and cut trees from 21 acres of other land belonging to Williams, for which act Williams brought trespass.

(b) Pending this suit, Hamilton agreed to exchange farms with Crossman, who covenanted that "should Hamilton gain a certain law-suit now pending, wherein Williams is plaintiff and Hamilton defendant, the cause of said action of Williams being for 21 acres of land, to pay Hamilton $1,000 more," and (after several details about smaller items), "Hamilton to give a good and sufficient deed, free from liens," etc.

(c) Contemporaneously with the execution of this contract, Hamilton delivered to Crossman a deed for 200 acres of land. Subsequently Williams was non-prossed in said suit. Hamilton then brought covenant against Crossman to recover, inter alia, the $1,000 provided for in the contract, but without having previously tendered a deed for the 21 acres.

1. In such a case, the deed to be made under the contract fairly referred to the 21 acres, and it being admitted that no deed therefor had been delivered, or even tendered, there was error in not instructing the jury explicitly that as to the item of $1,000, for the 21 acres, the plaintiff was not entitled to recover.

Before STERRETT, GREEN, McCOLLUM and MITCHELL, JJ.; CLARK, J., not sitting.

No. 226 October Term 1889, Sup. Ct.; court below, No. 41 March Term 1881, C. P.

To the term and number above stated, J. N. Hamilton brought covenant against Asa Crossman on the following agreement under seal:

" Whereas, Asa Crossman, of Montgomery township, Indiana county, Pa., has exchanged his farm in Warren county, Virginia, of 240 acres, more or less, with J. N. Hamilton, of West Indiana borough, Pa., for one of 200 acres, or more, lying in Green township, county of Indiana, state of Pennsylvania; it

is .agreed by the said Crossman that he will surrender his agreement with Elias Biggs, in reference to furnishing rails, etc., for said farm; also pay said Hamilton $500 in cash, also $1,000 more, to pay off a certain claim against said farm in Virginia. It is also agreed, that should the claim reach at the present time more than $1,000 against said farm in Virginia, said Crossman to make the amount good to whatever amount it may reach. In other words, to pay Hamilton a sum sufficient to meet all claims, and give Hamilton a clear deed, free from all liens or incumbrances; and Crossman further agrees that should Hamilton gain a certain law-suit now pending, wherein P. A. Williams is plaintiff and said Hamilton defendant, the cause of said action or claim of Williams being for twenty-one acres of land, to pay Hamilton $1,000 more. Should Hamilton lose said suit he is only to receive the $1,500 or more, previously mentioned, or the $500 and sufficient more to satisfy all claims against said Virginia farm, supposed now not to reach a greater sum than $1,000. Said Hamilton to assign his insurance policy to said Crossman upon the buildings on said farm. Said Hamilton to have possession of said Virginia farm as soon as the laws of Virginia will admit. Said Crossman to have possession of said farm in Pennsylvania at any time he desires the same. Hamilton reserving the saw logs now cut and not put to the creek, which he had sold to the Twolick Lumber Co. Hamilton to give a good and sufficient deed, free from liens, etc. Hamilton to have one·half the share of wheat now growing, which would fall to Crossman if he had not sold; in other words, to have one sixth of the wheat crop now growing on said Virginia farm, with all the share or one third of spring crop.

" Witness our hands and seals this 21st day of April, 1876."

At the trial on November 15, 1887, it was made to appear that when the contract on which suit was brought was executed, a deed for 200 acres of land was delivered by Hamilton to Crossman. This land had previously been conveyed to Hamilton by P. A. Williams, who, at the time of delivering his deed, had executed an agreement with Hamilton containing the following covenant:

" Now, therefore, in consideration of the premises the said P. A. Williams doth covenant and agree to and with the said

Charge of Court below.

J. N. Hamilton that the boundary lines designated on the said deed embrace all the cleared land now being upon the said land, and that the residue owned by said P. A. Williams, if any, is unimproved, and the said P. A. Williams further agrees to be held responsible for any damage or injury which the said J. N. Hamilton shall or may sustain by reason of the cleared land not all being embraced in the said boundaries."

The plaintiff, under objection and exception to the defendant, put in evidence the record of the suit of Williams against Hamilton, showing that the action referred to in the agreement between Crossman and Hamilton was for trespass, and that when the case was called for trial, the plaintiff had suffered a nonsuit. The defendant called Mr. Justice CLARK, of counsel for Williams, and offered to prove by him that the case of Williams against Hamilton was allowed to be non-prossed because of the insolvency of Hamilton. The offer was objected to and refused.[13]

The court, HUNTER, P. J., 10th judicial district, presiding, charged the jury in part as follows :

Was the twenty-one acres mentioned in this agreement, then? I shall repeat, was the twenty-one acres, or so much of it as gave the defendant an interest in the Williams suit, in the exchange of farms? The plaintiff claims that it was, that this action of trespass brought for damages to the twenty-one acres of land by Williams, was within the exchange of lands, and, therefore, it gave an interest to Crossman. But, gentlemen, the defendant took a deed; the taking of that deed, whatever may have been the understanding prior to that, would be the consummation of the contract; and this deed, if the survey be right and the description in the deed be right, would go to show that the twenty-one acres was not in this deed, and, therefore, was not in the exchange of lands as consummated and finished by the passing over of these deeds. It is true, as contended, that the words " or more " are in the deed; but, as we have said, you have courses and distances named in the deed, and receiving such a deed is a conclusion of the contract, as we have said. Was there, then, a promise to convey the twenty-one acres of land? There is nothing in the agreement at all about the deed, but simply about the payment of $1,000 should

the action be successful. We inadvertently omitted to state that this suit of Williams was nonsuited. That was virtually a withdrawal of the suit from court and, for the time being, a substantial winning of the action.

[Was there, then, we repeat, a promise to convey the twenty-one acres of land in consideration of $1,000? Or, was the promise to pay the $1,000 made in good faith upon the expectation that title would be made for the twenty-one acres. As we have said, there is nothing in the article of agreement itself that provides for the giving of a deed. The language of the agreement is very peculiar, but we allowed parol evidence to be offered; we allowed proof to be made as to what occurred at the time the agreement was signed, for the purpose of explaining this agreement and showing what the true intent and purpose of the parties were.] [10] Now a number of witnesses have testified that there was a promise to make a deed for the twenty-one acres of land, and that that was the purpose and object in view when this provision of $1,000 was made in the agreement. We shall not discuss the law at this point further, because the points submitted by counsel raise the law, and our answers will be the law which you will receive at the hands of the court.

The plaintiff requests the court to charge, inter alia:

2. If the jury find from the evidence in the case that when the case of P. A. Williams v. J. N. Hamilton, No. 102 April Term 1874, in the Common Pleas of Indiana county, was called in court for trial, Williams, the plaintiff, made default and did not appear to prosecute his claim, and that therefore the same was non-prossed by the court, this was a gaining of the suit on part of Hamilton, the defendant, within the meaning of the article of agreement on which this suit is founded.

Answer: The non-pros was for the time being a successful termination of the suit in favor of Hamilton; but it is proper here to say that such non-pros did not adjudicate the rights of the parties. The non-pros showed that the plaintiff gave up the suit at the time.[3]

The defendant requests the court to charge:

1. The rational and equitable construction of the agreement of April 21, 1876, is that Hamilton was to establish his title to the twenty-one acres, and that Crossman was to pay $1,000 for

the land; not for a judgment of non-pros such as was had in the case of Williams v. Hamilton.

Answer: We are unwilling under all the evidence to place this construction on the agreement suggested in this point. Hence we admitted parol evidence to explain and prove what the contract was, in this respect, as understood by the parties.[6]

2. So far as the twenty-one acres of land are concerned, this is an action of covenant, brought for the recovery of the purchase money claimed for said land, and such action cannot be maintained without tender of a deed before the action was brought.

Answer: If you find that the contract was for the purchase of the twenty-one acres for the consideration of $1,000, Hamilton should have tendered a deed or offered a deed before bringing this action.[7]

3. The plaintiff's title, if he has any at all, to the twenty-one acres, is not a marketable one, and he cannot therefore recover for that land.

Answer: We are of the opinion that the title presented at the time of this agreement, or, at the time the action was brought, was not a marketable title to the twenty-one acres.[8]

The jury, allowing certain set-offs, returned a verdict in favor of the plaintiff for $364.38. A rule for a new trial having been discharged, and judgment entered on the verdict, the defendant took this appeal, specifying that the court erred:

3. In the answer to plaintiff's point.[3]

6–8. In the answers to defendant's points.[6 to 8]

10. In the portion of the charge embraced in [ ][10]

13. In the refusal of defendant's offer.[13]

*Mr. John P. Blair* (with him *Mr. J. A. C. Ruffner*), for appellants.

*Mr. J. N. Banks* (with him *Mr. Sam'l Cunningham*), for appellee.

OPINION, MR. JUSTICE MITCHELL:

The main contention in the case depends on the agreement of April 21, 1876. Though evidently the production of the

parties themselves, (as testified by plaintiff in rebuttal), and quite defective and confused, it is nevertheless soluble by a brief consideration of the situation and intention of the parties. The principal contract was for the exchange of farms, the payment of the boot money, the furnishing of money by Crossman to clear his farm in Virginia of "a certain claim," and the making of a deed by him clear of incumbrances. Then follows the clause which has made the present trouble:

"And Crossman further agrees that should Hamilton gain a certain lawsuit now pending, wherein P. A. Williams is plaintiff and said Hamilton defendant, the cause of said action or claim of Williams being for twenty-one acres of land, to pay Hamilton $1,000 more. Should Hamilton lose said suit, he is only to receive the $1,500 or more previously mentioned;" and (after several details about smaller items) "Hamilton to give a good and sufficient deed, free from liens," etc.

What is the rational construction of this clause? What gave Crossman such an interest in a lawsuit of Hamilton's that he was willing to pay a thousand dollars if Hamilton gained it? The parties themselves describe the subject-matter of the suit as "being for twenty-one acres of land." The record shows that it was an action of trespass. If it was barely that, and nothing more, it would simply determine whether Hamilton should be amerced for his tort, and how much, and no possible interest of Crossman in that question has been shown or suggested. But if it was regarded as a suit for trespass, which would be a test of title, then success would mean that Hamilton could make the good and sufficient deed stipulated for, and thereupon Crossman would pay him the additional thousand dollars for the additional land, to wit, the twenty-one acres. So regarded, the whole matter becomes plain and comprehensible. The deed that was to be made refers fairly, if not exclusively, to the twenty-one acres. They were not included in the deed already made and dated three weeks before the contract, and presumably delivered contemporaneously; for that corresponded, with trifling variations in the second and fourth courses, with the deed from Williams to Hamilton, which called for two hundred acres, "strict measure." But it appears from the evidence that in the purchase of these two hundred acres Hamilton had understood that all the cleared land of the Williams farm was

included, and he had a covenant from Williams to be responsible for any damage which Hamilton should sustain by reason of the failure of the boundaries given in the deed to include all the cleared land. This was apparently the origin of the controversy about the twenty-one acres, and led to the acts which resulted in the suit for trespass. Hamilton, and from him Crossman, plainly regarded the suit as a test of title, and the payment of the additional thousand dollars was clearly contingent on the validity of the title of which Hamilton's gaining the suit was to be accepted as satisfactory evidence. The deed would then have followed as the necessary completion by Hamilton of his part of the performance of the covenants of the agreement. It being admitted that no deed had been delivered, or even tendered, the jury should have been told explicitly that as to the item of $1,000 for the twenty-one acres the plaintiff could not recover.

With this understanding of the agreement, it follows that the only tenable construction of the expression, " gain the suit," is that it should be brought to a successful termination on the question of title. That was the only question in which Crossman had any interest, and that was the only success which could in any way further the purpose of the agreement. The suit was terminated by a nonsuit, which in itself did not conclusively settle anything. Evidence as to the reasons of the nonsuit was therefore admissible. But the failure of the plaintiff to make out his case on the delivery or tender of a deed, renders this point unimportant.

The main contention being thus settled adversely to the plaintiff, on grounds that will probably be decisive of his claim to recover at all, it is not worth while to discuss the minor questions involved in the numerous assignments of error.

Judgment reversed, and venire de novo awarded.