DUNN et al. v. ONEIDA COMMUNITY, Limited, et al.

(Circuit Court, N. D. New York. March 26, 1910.)

1. EXCHANGE OF PROPERTY (§ 11*)—TITLE—DELIVERY AND ACCEPTANCE.

Pursuant to a contemplated contract for electric power, the electric company offered to exchange two 40-cycle motors in question for two 60-cycle motors defendant then had in operation, the electric company agreeing to extend its wires to defendant's switch board and defendant to install the motors and do all wiring in connection therewith. The electric contract did not refer to the exchange of the motors and was never carried out. The 40-cycle motors were sent to defendant's premises, but were never installed, nor were the 60-cycle motors disconnected or delivered to the electric company or its receivers. Defendant wrote the electric company's receivers that it had decided to keep the 60-cycle motors and returned those shipped by plaintiff to be exchanged, but subsequently refused to do so. Held, that title to the motors so shipped to defendant for exchange never passed to it, but that defendant elected to rescind the exchange contract, and was bound therefore to return the motors to defendant or account for their value.

[Ed. Note.—For other cases, see Exchange of Property, Dec. Dig. § 11.*]

2. EXCHANGE OF PROPERTY (§ 10*)—BREACH OF CONTRACT—DAMAGES—LIEN.

Where an agreement for an exchange of electric motors was made pursuant to a contemplated contract for electric power, and, the power con-

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

tract not having been performed, defendant elected to rescind the exchange without asserting any lien on the electric company's motors, delivered in accordance with such contract, defendant could not thereafter claim a lien on such motors for damages alleged to have been sustained by the electric company's breach of the power contract.

[Ed. Note.—For other cases, see Exchange of Property, Dec. Dig. § 10.*]

Action by George W. Dunn and others, as receivers of the Madison County Gas & Electric Company against the Oneida Community, Limited, and another. Decree for complainants.

This is an action by the above-named receivers against the defendants, the Oneida Community, Limited, and Stephen R. Leonard, to recover four 40-cycle motors in the possession of the defendants or their value alleged to be about $1,200, and which motors said receivers claim are the property of the Madison County Gas & Electric Company, one of the corporations of which they are receivers appointed by this court. The only questions now before the court are, first, the question of title; and, if that is found in favor of the complainants, second, have defendants, or either of them, a lien on such motors which justifies the retention of possession? It was stipulated that if the actual value of such motors becomes material, or if the amount of certain damages sustained by the defendants becomes material, the questions shall be sent to a special master for evidence on those points.

Abram J. Rose and George B. Curtiss, for complainants.
Will B. Crowley, for defendants.

RAY, District Judge. Prior to January 8, 1907, the defendants had some conversation with H. W. Coffin representing the Hudson River Electric Power Company, which in turn represented and controlled the Madison County Gas & Electric Company, that being a subsidiary company of the Electric Power Company, as to the making of a contract by which the said Power Company was to furnish power to the Oneida Community, Limited, a corporation. The Empire State Power Company was also a subsidiary company of the Electric Power Company, and it was contemplated that the contract was to be between the Empire Company and the Oneida Company. January 8, 1907, the Electric Power Company, by Coffin, wrote the Oneida Company a letter stating the terms of a contract it would make for furnishing power or electrical energy, the amount it would furnish, and the price to be paid. The offer was:

"We will enter into a 5 or 10 year contract to supply," etc.

In giving the terms of the contract to be entered into, the letter said:

"We will exchange the two 20 horse power 60-cycle motors and the two 10 horse power 60-cycle motors which you now have in use, provided they are in good condition, for two 22 horse power 40-cycle motors and two 12 horse power 40-cycle motors without cost to you. We will extend our wires to your switchboard at our expense, and you are to install the motors and do all wiring in connection therewith, and such wiring and material as is necessary for your lighting system."

The letter concluded as follows:

"We think it would be possible to work out a penalty clause in our proposed contract covering possible interruptions that would be mutually satisfactory, but the basis of such a clause will have to be decided upon at a future confer-

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

ence. We expect to be able to demonstrate that our power is constant and reliable."

The Oneida Company assented to the proposition contained in the letter of Coffin, and a written contract was prepared dated March 15, 1907, and sent to Mr. Leonard of the Oneida Company accompanied by the following letter:

"Enclosed I hand you three copies of the proposed power contract with the changes suggested by you. The wording of the minimum clause paragraph is slightly changed, but the new wording makes the terms plainer, and is precisely in effect to the proposed clause which I prepared. I think you will find all other conditions will be agreeable. If possible, I would be glad to have you execute this contract, and mail to me to-morrow at Amsterdam, N. Y., where I will have the officers of the Empire State Power Company and the Hudson River Electric Power Company execute same, and return one of the copies to you. I expect to be in the Utica office Thursday forenoon, and, if desirable to consult me for anything, please call Bell Telephone #1672."

The Oneida Company did execute the written contract submitted and returned it as requested. This written contract contains no reference whatever to an exchange of motors or to the letter or its provisions. July 1, 1907, the Electric Power Company wrote the Oneida Company:

"I refer to yours of June 24th, and beg to advise you that 2–12 H. P. forty-cycle motors have been shipped to Oneida, and our local manager, Mr. E. J. Kennedy, has been instructed to deliver same to you."

No letter of June 24th is in evidence.

The following mutual concession is in the case:

"It is conceded that after the writing of the letter, Exhibit A (that of January 8, 1907), and the acceptance of the proposition therein made by the Oneida Community, Limited, the Hudson River Electric Power Company took the four motors in question to the premises of the Oneida Community, Limited, and left them there; that they were not installed or connected with any electrical machinery, nor have they ever been; that the four motors, two 20 H. P. 60-cycle, and two 12 H. P. 60-cycle motors mentioned in Exhibit A as belonging to the Oneida Community, Limited, were at the time Exhibit A was written in use on the premises of the Oneida Community, Limited, and have been ever since used by the Oneida Community, Limited, and never have been disconnected or in the possession of the Hudson River Electric Power Company or any of the defendants in the equity action or of the receivers or tendered to them."

Also:

"That neither the Hudson River Electric Power Company nor the Empire State Power Company ever completed or carried out the contract for the furnishing of electric light and power to the Oneida Community, Limited."

About November 1, 1908, these receivers were appointed by this court in an equity action wherein Eben H. Gay and another were plaintiffs and the Hudson River Electric Power Company and seven other subsidiary companies, including the Madison County Gas and Empire State companies were defendants, the bill alleging insolvency, etc., and having for its object the winding up of such corporations.

It would seem that the exchange of motors was treated in a way as an independent proposition, as it was not included in the written contract or referred to in any way therein. As it was not included in the written contract, that proposition of exchange of motors might be

considered as having been abandoned as part of the contract to furnish power. There was some correspondence between the companies after the contract was signed by the Oneida Community, Limited, but I find no reference to the motors until we come to a letter of February 11, 1909, written by the receivers to the Oneida Company, Limited, which reads as follows:

"Confirming our recent conversation by telephone, relative to the 12 and 22 H. P. motors which you have at Kenwood, will you kindly advise us as soon as possible what you desire to do. You will remember that you were to write me in relation to the matter and I will appreciate the information as soon as it is convenient for you to let me have it."

The motors were not returned, and February 11, 1909, the Oneida Company, Limited, wrote C. H. Peddrick, Jr., representing the receivers, as follows:

"After talking with you over the 'phone the other day in regard to the motors, we received a letter from Mr. De Lano and copies of letters from your office asking that the matter be straightened out as promptly as possible. Mr. Leonard has written to Mr. De Lano explaining the situation. I have looked the matter up from the factory end, and as long as the power situation is so unsettled we have decided to keep the motors that we purchased at the time we expected to receive power from you, and return the four motors that you shipped us, and that were to be exchanged for the 60-cycle 250 volt which we own. Undoubtedly you would still follow out your part of the contract by replacing the motors in the new shop should you at any time in the future be in position to supply the 40-cycle energy. Assuming that such would be the case, we are holding the motors awaiting instructions from you. We can send them on to Oneida by team if you so direct."

March 17, 1909, Mr. Peddrick wrote said company as follows:

"I refer to my communication to you under date of March 9th regarding the return of the 40-cycle motors. I do not desire to bother you unnecessarily with this matter, but I should like to know if you are intending to return these motors, and, if so, about when."

To this the Oneida Company replied:

"Answering your letter from Mr. Peddrick to Mr. Marble we have to say that certain considerations have appeared in regard to these motors whereby the question of returning them to you at this time has come up for discussion. We hope to give you some further definite word in the matter before long."

Other correspondence follows, but I find nothing that bears on the real question in the case, viz.: Were the motors delivered to and accepted by the Oneida Community, Limited, so that title passed? They were not installed or put in use by the Oneida Company. It is evident they were to be used in a reconstruction of the plant of that company so as to accommodate itself to the supply of power it was contracting for. The Oneida Community, Limited, did not disengage or take out the motors they owned and had in use and which it was to give in exchange for the motors in question, or send or offer to send them to the power company. The Oneida Community, Limited, did nothing to indicate an acceptance of such motors. The letter of January 8th stated:

"We will extend our wires to your switchboard at our expense and you are to install the motors and do all wiring in connection therewith and such wiring and material as is necessary for your lighting system."

It was a part of the exchange of motors that the power company was to extend its wires to the Oneida Company's switchboard, which it did not do, and the Oneida Company was to install the motors, which it did not do. It did put in some additional wiring, but so far as appears this had nothing to do with the exchange of motors. The letter of February 11, 1909, from the Oneida Community, Limited, to Peddrick, is a plain election to consider the proposed barter or trade or exchange of motors as abandoned. The Oneida Community, Limited, had decided to keep the motors it had purchased and which it had in use and "return the four motors that you shipped us," these being the motors in question.

If the title to these four motors in question here vested in the Oneida Community, Limited, when placed on their premises, then the title to the ones that company had in use and which they decided to keep (the 60-cycle 250 volt motors) vested in the Hudson River Electric Power Company. I do not understand that A. can say to B., "I will give you my white horse for your bay mare," and on B.'s saying, "I will do it," and on A. bringing his white horse on the premises of B. to make the exchange, lose title to both horses, B. asserting that as the white horse is delivered he will keep it, and that as the bay mare has not been taken from the stable and delivered he will keep that also. When that becomes the law, grand larceny or horse larceny will have been sanctioned by the court so deciding. Here, assume that it was a sale of motors to be paid for by other specific motors, it is evident that the acceptance of the motors in question was to be accompanied by a delivery of the motors then in the plant of the Oneida Community, Limited. But this latter company elected not to accept or keep the motors placed on its premises by the Hudson River Electric Power Company but to return them, and to this the power company assented. It also elected not to part with the motors it owned and had in use in exchange for the others, and to this the power company assented. The contract of sale was rescinded or abandoned by mutual consent. It was evidently the intention of the parties that delivery by the power company and acceptance by the Oneida Company was to be accompanied by a surrender of the motors owned and in use by the Oneida Company. Clearly the Oneida Company had the right with the assent of the power company to rescind and not perform the contract or abandon it, and when the election was made and assented to by the receivers it was too late for the Oneida Company to claim it had purchased the motors and that title had vested, and that it was entitled to retain possession under and by virtue of the contract. Graves v. White et al., 87 N. Y. 463, 465. In this case at page 465, of 87 N. Y., Finch, J., all concurring, says:

"We think the ruling of the General Term was right. It rests upon a foundation common to all contracts that two persons who are competent to make a contract are competent to waive or abandon it, and, when both concur in such waiver or abandonment, their united assent dissolves the contract, and the rights of each under it are ended. This was long ago held as to contracts respecting personal property."

This would be conclusive of this case even had there been a delivery by the power company and an acceptance by the Oneida Company, for

a contract rescinded or abandoned places the parties in the same position they were before it was made. The Oneida Company was not only to exchange motors, but to install those it received from the power company. This it elected not to do. If the contract was entire and the power company failed to perform, the Oneida Company had the right to stand on the contract, perform on its part and sue for damages, or to rescind or abandon the contract. This last is what it elected to do, not having installed the new motors or delivered the ones it was to give in exchange, and in such case it could not retain what it had obtained possession of under the contract. See Graves v. White, et al., supra. The court there said:

"If the plaintiff could have stood upon the contract and compelled performance or recovered damages for the breach, she was not bound to adopt that remedy, but had the right to bring ejectment to recover back her land. In so doing, and giving the preliminary notice to surrender possession, she, too, gave her assent to the abandonment of the contract, and the parties who made it having thus by mutual assent rescinded it, its vitality was gone, and it ceased to exist. Neither party, thereafter, could invoke its terms or protection as against the other; and the plaintiff was at liberty to maintain ejectment to recover the possession of the land to which she had a legal title."

In Hubbell v. Pac. Mut. Ins. Co., 100 N. Y. 41, 47, 2 N. E. 470, the court, said:

"Either party not in default may compel performance by the other, or, treating the refusal as an abandonment, may himself join in the abandonment and so terminate the contract and destroy its existence. Graves v. White, 87 N. Y. 463; New Eng. Iron Co. v. Gilbert El. R. R. Co., 91 N. Y. 168. If in such case the breach on one side is such as to indicate an intent to abandon or repudiate the agreement, the other party may assent and so the contract be dissolved."

See, also, Harris v. Hiscock, 91 N. Y. 340, 343, where a lease was abandoned by mutual consent. Brewster v. Wooster, 131 N. Y. 473, 30 N. E. 489, is to the same effect, and it also holds that when a contract is rescinded or abandoned by mutual acts or consent, the consideration or property received must be returned. This is clearly so when the one who has received property into his possession elects to rescind or abandon the contract and return the property that has come into his possession. That is precisely what the Oneida Company did. True it did not actually return the motors in its possession but it elected and promised so to do. However, I hold that the motors in question here were never delivered to or accepted by the Oneida Community, Limited; that the motors never became its property. They were there for installation in pursuance of an agreement which neither party fully performed, and which the Oneida Company elected not to perform, and in which election the power company acquiesced on the promise of the Oneida Company to return its property. Later the Oneida Company took the position that it either owned the motors or that it has a lien thereon because of damages sustained by reason of the nonperformance of the agreement by the power company to furnish light and power. If the contract to furnish power and exchange motors is treated as entire, then it was abandoned by mutual consent in its entirety with an election to return the motors and no claim for damages

for its breach exists or can be sustained. Harris v. Hiscock, 91 N. Y. 340, 344, 345. The court said:

"The lease was canceled by mutual agreement under seal. The failure of the arbitration cannot restore the abandoned contract. No suit, therefore, can be maintained upon it for it does not exist. If Hiscock remained in possession he was not in under the lease. If he was liable for anything it was not for the rent reserved. If he can sue for anything it is not upon the covenants in the lease. It can only be for compensation for its surrender."

If that part of the letter of January 8, 1907, relating to the motors and not included in or referred to in the written contract is treated as an independent agreement or contract, then it was abandoned by mutual consent, and no claim for damages can be recovered under it or based thereon, but there would be a claim for damages arising on the written contract executed subsequently to the writing of the letter. If any claim for damages exists it is on a contract that has nothing whatever to do with the motors in question, except incidentally. I do not know of any rule of law or of equity that gives a lien on property to satisfy a claim for damages under such circumstances. The agreement or election to return the motors was absolute and unconditional. No lien was asserted. There was an unconditional promise to return the motors instead of an assertion of the contract and an insistence on compliance therewith, or a suggestion that the motors would be retained as compensation in whole or in part for damages sustained. Having full knowledge of all the facts, the election made and conveyed to the receivers was that the Oneida Community, Limited, had decided to keep the motors it owned and had in use, and which were to be given by it in exchange for the motors the power company was to furnish, and return to the receivers the motors it was to receive in exchange, and which the power company had placed on its premises for installation in place of the motors to be sent to it. I can only look at the transaction as an election to abandon the agreement to exchange motors, and when that election was made the agreement for such exchange had no validity—it was ended—and each party stood where it did before the motors were sent to the premises of the Oneida Company. There was a sufficient consideration. The exchange of motors involved (1) the furnishing by the power company of the four motors in question for installation, which it did by placing them on the premises of the Oneida Company for installation by it; (2) the taking out of the motors the Oneida Company owned and had in use which it was to do, but did not do; (3) the installation of the motors furnished by the power company in place of the ones removed, which the Oneida Company was to do, but did not do; and, (4) finally, the delivery by the Oneida Company of the removed motors to the power company, which was not done. These three things, to be done by the Oneida Company in order to effect the exchange, it elected not to do, and said, "I will return the new motors you sent here." This was assented to and was an effectual mutual abandonment of the contract of exchange. Thereupon the power company became entitled to the motors in question or their value. Williston on Sales, § 593, p. 982, and cases cited. I know of no principle of equity that will permit a retention of these motors. "In the absence of anything to show a contrary in-

tent on the part of the parties, a contract for the exchange of property must be performed on both sides concurrently." Brennan v. Ford, 46 Cal. 7; Pead v. Trull, 173 Mass. 450, 53 N. E. 901; 17 Cyc. 833. The Oneida Company was in default. It did not perform; it elected to abandon and return the motors. There was no waiver of performance on the part of the Oneida Company by the power company except in the mutual abandonment on the election to surrender and return these motors. Neither party to an exchange of property can put the other in default except by a full performance on its part or an offer to perform. Royal v. Dennison, 109 Cal. 558, 42 Pac. 39; Pead v. Trull, 173 Mass. 450, 53 N. E. 901; Hamilton v. Crossman, 130 Pa. 320, 18 Atl. 634; Crabtree v. Levings, 53 Ill. 526. So far as the exchange of property was concerned, it is seen that the power company fully performed on its part, and the only party in default was the Oneida Company, whereupon it elected to abandon the exchange and return the motors in question, and gave notice of such election, which was acquiesced in by the power company. This abandonment as we have seen ended the contract, and left the power company the owner of the property in question as between it and the Oneida Company, the Madison County Gas & Electric Company being the real owner. In this view of the case it is immaterial whether there was a delivery of the motors in the first instance. The contract having been abandoned with an election to return the motors, they became the property of the power company. As no credit was contemplated, it had a lien until the other motors were delivered, which under the agreement to return ripened into a right of possession.

Within the cases cited the receivers are entitled to the motors in question, and there will be a decree accordingly, or for their value if not surrendered, in which case it will be sent to a master to take evidence as to the actual value thereof. The decree should provide for such reference.